UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| SHANA L.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL NO. 3:21cv741 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits under Title II of the Social Security Act. Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2024.

2. The claimant engaged in substantial gainful activity during the following periods: during the second quarter of 2019 (20 CFR 404.1520(b) and 404.1571 *et seq*.).

3. However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.

4. The claimant has the following severe impairments: disorders of the lumbar spine including degenerative disk disease, stenosis with claudication, cauda equina syndrome, and spondylosis, s/p L4-5 and L5-S1 fusion; lumbar post-laminectomy syndrome/failed back syndrome; chronic pain disorder; obesity; and asthma (20 CFR 404.1520(c)).

5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

6. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except: the claimant can lift, carry, push, and pull a maximum of 10 pounds, with occasional lifting and carrying of lesser weights such as small tools or file folders. The claimant can stand and/or walk two hours of an eight-hour workday, and sit for six hours of an eight-hour workday. The claimant cannot stand or walk longer than 15 minutes at a time. After sitting for 30 minutes, the claimant must have the opportunity to stand at the workstation for two minutes. The claimant can occasionally climb ramps and stairs, but must avoid climbing ladders, ropes, and scaffolds. The claimant can occasionally balance, stoop, kneel, and crouch, but never crawl. The claimant must avoid concentrated exposure to temperature extremes, high humidity, fumes, odors, dusts, gases, and poor ventilation. The claimant must avoid concentrated exposure to hazards such as dangerous moving machinery and unprotected heights. The claimant must avoid the operation of motorized vehicle.

7. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

8. The claimant was born on December 22, 1976 and was 41 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

9. The claimant has at least a high school education (20 CFR 404.1564).

10. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568).

11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national

      economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

12.     The claimant has not been under a disability, as defined in the Social Security Act, from December 18, 2018 through the date of this decision (20 CFR 404.1520(g)).

(Tr. 17-28).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed her opening brief on April 25, 2022. On July 6, 2022 the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on August 25, 2022. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present

4

case, Step 5 was the determinative inquiry.

In December 2018, Plaintiff had an anterior lumbar fusion at L4-5 and L5-S1 in hopes of relieving her "intractable back and leg pain." (Tr. 271). The procedure was not as successful as hoped. At her surgical follow-up visit in March 2019, Plaintiff complained of continued pain and her doctor diagnosed post-laminectomy syndrome. (Tr. 484). As she began physical therapy in April 2019, the therapist noted a slow but steady gait with reduced flexion and extension. (Tr. 539). He also noted that Plaintiff's "pain is in the right low back close to the upper lumbar spine with pain rated at a low of 4/10 to a high of 7/10. (Tr. 539).

A May 2019 MRI documented postoperative changes including edema in the soft tissues immediately posterior to the hardware. (Tr. 641). The radiologist noted "some enhancement in this region, probably reflecting granulation tissue." (Tr. 641). The radiologist was unable to assess the neural foramina at L4-L5 and L5-S1 due to the surgical hardware. (Tr. 641). In September 2019, Plaintiff again followed up with her surgeon, Jamie Gottlieb, M.D., who noted reduced range of motion in the lumbar spine and tenderness. (Tr. 444). Dr. Gottlieb noted Plaintiff's flexion at 45 degrees and extension at 5 degrees. (Tr. 444). Plaintiff demonstrated facet tenderness bilaterally and sciatic notch tenderness bilaterally as well. (Tr. 444). Dr. Gottlieb diagnosed lumbar radiculopathy, spinal stenosis of the lumbar region, sacroiliac joint pain and lumbar post- laminectomy syndrome. (Tr. 445).

Another MRI was performed in May 2020 which showed "postoperative changes L4-S1 with some junctional stenosis at L3-4 that is mild." (Tr. 1261). An X-ray from October 2020 revealed "bony detail along the L5-S1 prosthesis is less well-defined" in comparison to March 11, 2019 which may "reflect developing fusion across the disc space." (Tr. 1415). On December 3,

2020, Plaintiff was seen by a pain clinic for constant pain with intermittent flare ups. (Tr. 1434). Her pain was aching, throbbing, deep, cramping and pressured. (Tr. 1434). Worsening factors included: "increased activity, heavy lifting, bending, getting up, lying on back, sitting or standing for a long time, weather and pressure changes, and sometimes for no particular reason." (Tr. 1434).

On February 28, 2019, Jamie Gottlieb, M.D., evaluated Plaintiff in a post-operative appointment. (Tr. 482). He noted aching and throbbing from Plaintiff's right groin to top of thigh that was deep, constant but improving. (Tr. 484). He determined that Plaintiff should wean out of her lumbar brace, start physical therapy for core strengthening, range of motion and stabilization. (Tr. 484). He directed her to continue wearing BGS for another 3 months. (Tr. 484). He opined that he would allow her to return to work with lifting no greater than fifteen pounds, allowing her to sit and stand as needed, and no bending or twisting. (Tr. 484). He directed her to return in 3-4 months for follow up with imaging. (Tr. 484).

Dr. Scott Ehmen, M.D., completed a consultative examination on October 14, 2019. (Tr. 406-410). Dr. Ehmen found tenderness or spasm at T8-T12, bilateral lumbosacral tenderness, abnormal flexion, extension and rotation of lumbosacral spine with a healed surgical incision [on the] lower back. (Tr. 409). He also noted abnormal range of motion in hips and/or pelvis, abnormal heel walk, abnormal toe walk, decreased strength on flexion and extension of both knees. (Tr. 409). Dr. Ehmen stated, "Due to low back pain and flexibility is able to get on and off table with difficulty… gait is slow, deliberate but fairly steady. When walking fast is slightly unsteady but does not need assistance." (Tr. 409). He also indicated in a "Range of Motion Chart" that Plaintiff's hips bilaterally had only 30/40 abduction, 10/20 adduction, 80/100 flexion, 30/40

6

internal rotation, 15/30 extension. (Tr. 406).

Based on his examination and findings Dr. Ehmen opined that Plaintiff would be able to stand/walk at least 2 hours in an 8-hour day. (Tr. 409). He opined that she could walk and stand for short time, can stand for part of 8-hour shift with extra seated breaks. (Tr. 409). Plaintiff is able to lift over 10 pounds occasionally, 10 pounds frequently. (Tr. 409). Dr. Ehmen noted that Plaintiff would need to alternate sitting and standing and that light exertional activity may be affected during flare up of COPD and asthma. (Tr. 409).

At the hearing, Plaintiff testified that lower back pain has kept her from working. (Tr. 50). Her pain has been constant since before surgery. (Tr. 50). It is a stabbing, shooting and uncomfortable pain. (Tr. 50). It shoots down her left leg and up her spine. (Tr. 50). Plaintiff takes prescription medication to manage her pain. She takes Norco, cyclobenzaprine, gabapentin, ibuprofen and Tylenol. (Tr. 51). She had recently begun physical therapy and was being considered for a nerve stimulator. (Tr. 51).

Plaintiff can sit for 30 minutes before her back would hurt so badly that she would need to get up and walk around. (Tr. 52). She can stand in place for 15-20 minutes before her lower back hurts too much to remain in that position. (Tr. 52). She can walk two city blocks before having to stop and rest. (Tr. 52). She had slight improvement after her back surgery in 2018. (Tr. 53). She has had unexplained falls that have aggravated her condition. (Tr. 53).

Plaintiff reported that she had only used heroin once and "almost lost [her] life over it." (Tr. 54). She was on Suboxone prior to her back surgery because of her dependence on pain medicine and the previous heroin overdose. (Tr. 54). She stopped using Suboxone three months prior to the hearing. (Tr. 55).

The vocational expert ("VE") classified Plaintiff's past work as a parts warehouse worker, a composite job of extruder operator and forklift operator, and a cleaner, housekeeping. (Tr. 56-57). In response to the ALJ's hypothetical involving sedentary work, the VE testified that all past work would be eliminated. (Tr. 58). The VE testified there would be other work in the national economy that Plaintiff could perform, including callout operator, document preparer, and addresser. (Tr. 58). The VE also testified that an employer would tolerate a maximum of twelve absences per year which would include leaving early or arriving late. (Tr. 60). If an employee had to stand twice an hour for five minutes after sitting for thirty minutes, the VE testified that would exceed the acceptable time off-task for the call-out operator job. (Tr. 61).

Plaintiff completed a function report dated September 6, 2019. (Tr. 171-178). Plaintiff noted she is unable to put on her bra and needs assistance putting on pants. (Tr. 172). She also uses a "prong" to wipe after using the bathroom. (Tr. 172). She reported that she can no longer perform house or yard work since she cannot "stand for long or bend and twist." (Tr. 174). The report concludes with her statement that she "had lower, major back surgery and have nerve damage. It has limited my life drastically. I do not like being so dependent on others for help. It has made my anxiety levels higher, and I guess, depressed." (Tr. 178).

In support of remand, Plaintiff argues that the ALJ did not properly evaluate the opinion of Dr. Ehmen, the consultative examiner. Dr. Ehmen noted that Plaintiff's flexion ability was abnormal and limited to 80/100, indicating that she cannot bend to a ninety-degree angle or below. (Tr. 406-07). "Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist." Social Security Ruling (SSR) 83-10.4 The ALJ limited Plaintiff's ability to stoop to "occasionally" despite Dr. Ehmen's findings that

8

her range of motion excluded stooping.

In evaluating Dr. Ehmen's opinion, the ALJ concluded it was "partially persuasive" finding that it was "generally consistent with the physical examination at the consultative examination." (Tr. 26). The ALJ further stated that, "the undersigned notes that some of the descriptors that include 'short time' and 'extra seated breaks' are somewhat vague." (Tr. 26). Those two sentences comprise the totality of the ALJ's evaluation of Dr. Ehmen's.

On January 18, 2017, the SSA adopted new rules which, for claims filed after March 27, 2017, modify the rules for evaluating opinion evidence. 82 F.R. 5844, 5869 (1-18-2017). Factors to be considered include: (1) Supportability; (2) Consistency; (3) Relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) Specialization; and (5) other factors. 20 C.F.R. §§ 404.1520c(c). Supportability and consistency are the two most important factors. 20 C.F.R. §§ 404.1520c(b)(2). Therefore, the regulations dictate that the ALJ "will explain" how the supportability and consistency factors were considered in the determination or decision. 20 C.F.R. §§ 404.1520c(b)(2). Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a) and (b)(1).

Here, the ALJ's evaluation does not meet the requirements of these new regulations. The ALJ apparently misunderstood the definition of "consistency." Consistency is an external check that references evidence from other medical and nonmedical sources, not an evaluation of

9

whether an opinion is internally consistent. 20 C.F.R. §§ 404.1520c(c)(2). The ALJ failed to note that Dr. Ehmen's opinion as to Plaintiff's flexion and inability to stoop was consistent with Dr. Gottlieb's restriction of no bending or twisting. (Tr. 484). The ALJ also failed to discuss the fact that Plaintiff's testimony and statements in her function report were also consistent with an inability to bend at the waist.

Clearly, the ALJ's analysis of consistency was incorrect, and no actual examination of the opinion's consistency with other evidence is contained in the written decision. The regulations require that the ALJ address only two of the five listed factors: consistency and supportability. Having failed to do even that, the ALJ has not complied with controlling law.

Further, there is no other persuasive opinion evidence relied on to support the occasional stooping limitation. Dr. Sands acted as the state agency medical reviewer in October of 2019. (Tr. 74-75). He opined that Plaintiff could occasionally stoop. (Tr. 74). However, in evaluating this opinion the ALJ stated he found the opinion "somewhat persuasive, but greater limitations are warranted by [the] expanded record to consider the claimant's degenerative disk disease, her obesity, and her asthma." (Tr. 26). The ALJ clearly disregarded this opinion as Dr. Sands found Plaintiff capable of light work and the ALJ limited her to the sedentary level. Having been disregarded, the opinion cannot suffice as substantial evidence in support of the ALJ's finding of an occasional ability to stoop. The ALJ's decision is left without any support from the medical evidence or opinions.

Additionally, by improperly evaluating Dr. Ehmen's opinion, the ALJ presented a hypothetical to the VE that was not supported by substantial evidence. A hypothetical question that does not include all limitations supported by the record is fundamentally flawed, and a

10

decision that a claimant can adjust to other work cannot stand if it is based on a flawed hypothetical. *Young v. Barnhart*, 362 F.3d 995, 1005 (7th Cir.2004).

Thus, as the ALJ failed to properly evaluate Dr. Ehmen's opinion and also failed to consider whether that opinion was consistent with other evidence in the record, remand is required.

## Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion..

Entered: September 12, 2022.

s/ William C. Lee  
William C. Lee, Judge  
United States District Court